FILED
99 JUN 15 AM 9: 53
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BENITA WRENN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CV-97-P-293-S |
| -vs.- ) | |
| ) | |
| ST. VINCENT'S HOSPITAL, ) | |
| and LAURA MESSAMORE, ) | |
| ) | |
| Defendants. ) | |

FILED
JUN 16 1999

## MEMORANDUM OPINION

The defendants filed their summary judgment motion on February 25, 1998. On June 26, 1998, the court considered the motion and thereafter took the motion under submission. After reviewing the motion, briefs, and evidentiary materials presented, the court issued an opinion granting the defendants' summary judgment motion on March 24, 1999. On April 6, 1999, the plaintiff filed a Motion for Reconsideration. The plaintiff's motion to reconsider asks this court to its March 24, 199 Order due to an error in a footnote in the Memorandum Opinion as well as "limited legal analysis" regarding the plaintiff's race discrimination in termination claim. The court finds that although the result remains unchanged, this Order and Corrected Memorandum Opinion is due to be entered to clarify any inconsistencies in the March 24, 1999 Order.

### Facts[3]

The plaintiff, Benita Wrenn, filed this race discrimination case[4] against her former

---

[3] The facts are presented in the light most favorable to the non-moving party.

[4] The plaintiff stipulated to dismissal of the invasion of privacy claim in her brief in response to the summary judgment motion.



employer, St. Vincent's Hospital, and two hospital employees, Laura Messamore and Michael Ballew.[5] Wrenn, a black female, was hired by St. Vincent's Hospital as a Cancer Center Assistant in 1989. In 1990, she transferred to the position of Secretary/Admitting Clerk in the Diagnostic Center. Two years later, Wrenn moved to the Mammography Center and retained her duties as a Secretary/Admitting Clerk.

In August 1994, Wrenn was hired from among a group of otherwise all white interviewees to a position as Secretary II at an off-campus facility called Lakewood Industrial Rehabilitation Center ("Lakewood"). Laura Messamore, a white female, was the manager at the facility and was responsible for hiring Wrenn. In addition to Wrenn and Messamore, the Lakewood staff included physical therapist Steve Parent-Lew (white male), physical therapy assistant Tom Long (white male), and physical therapy attendant Annie McWhorter (black female). In December 1994, Messamore hired Janesse Pontius (a white female) as a licensed physical therapy attendant.

Wrenn initially handled billing for the Lakewood facility. However, Wrenn soon complained that she could not perform the billing work along with her regular duties without incurring significant overtime. Messamore responded to Wrenn's complaint by relieving her of the billing duties. After the defendants removed Wrenn from the billing duties, Wrenn returned to her normal secretarial and admitting duties. Prior to her termination at Lakewood, Wrenn received above average ratings on her performance evaluations and had no disciplinary problems. Messamore, who was responsible for filling out the performance evaluations, noted that Wrenn was "highly motivated," had a "positive eager attitude," and "was important to the functioning of the department."

Wrenn apparently performed well despite problems that she allegedly experienced with

---

[5]Michael Ballew has been dismissed by agreement of the parties.

both Pontius and Messamore. According to Wrenn, she believed that she was treated differently in the office due to her race. For example, Wrenn alleges that Messamore discriminated against her by asking to look in her mouth after Wrenn returned from the dentist. Wrenn also complains that some of the remarks on her June 1995 performance evaluation were racially motivated, mostly due to Wrenn's assumptions that the white employees' evaluations did not contain such remarks. Wrenn admits, however, that this belief is based on her assumptions and that she has never read an evaluation of any other employee. Wrenn's main complaint centers on her belief that Pontius discriminated against her because of her race and that Messamore, in turn, discriminated against her by failing to take action against Pontius. In her deposition, Wrenn testified that Pontius "didn't know how to relate to me . . . because I was black." Although Messamore hired her, Wrenn also testified that she didn't believe Messamore knew how to "interact" with her because of her race. However, Wrenn admits that Messamore and Pontius never made any racial remarks, comments, or jokes. In addition to these allegations, Wrenn alleges that Messamore discriminated against her by selecting Pontius as the Project Team Leader for 1995[6] and that Pontius refused to see black patients if they arrived late.

Wrenn voiced her concerns to Bill Paullin, the Administrative Director, in written and verbal form. Paullin met with Wrenn, Pontius and Messamore in January 1996 to address the allegations of disparate treatment.[7] Shortly after Wrenn complained of racial discrimination, Messamore told her that she could no longer participate in the St. Vincent's choir, picnic

---

[6]Wrenn admits that she did not initially inform Messamore of her desire to be the Project Leader. However, once Messamore became aware of Wrenn's interest in being the Project Leader, Wrenn was given the position.

[7]Paullin also interviewed other employees concerning the allegations of discrimination by Wrenn. According to Paullin, the interviews generally revealed that Pontius and Wrenn did not get along very well, but that there was no evidence of discrimination.

committee, or other extracurricular activities because the rehabilitation center was too busy. According to Wrenn, these activities were generally planned around work schedules and did not impede her work performance.

In early March 1996, two months after the meeting with Paullin and Messamore, Wrenn was not at work for a week due to illness. During one of the days that Wrenn was absent, Messamore discovered several documents on Wrenn's computer that appeared to be personal rather than work-related. Messamore then opened a few of the documents to examine their contents. One of the documents was a letter from Wrenn to someone named Shirley Rutledge and began:

> I have been pretending to work all day. I haven't felt well, so I've been looking busy. I'm stealing a few moments of St. Vincent's time to write you a few lines.

Messamore testified that finding this and many other personal documents caused her great concern. As a result, Messamore called Michael Ballew to inform him of what she had discovered. Ballew asked Messamore to print out some of the documents that troubled her and check the work area for other evidence of personal work done on hospital time. Following Ballew's instructions, Messamore discovered other personal documents on the hard drive and on various disks in Wrenn's work area. Messamore also opened an office filing cabinet and found some personal documents that she believed were printed on the Hospital's printer and copied on the Hospital's copier.[8]

---

[8] Some of the items Messamore found were church bulletins, programs and various pictures that were not work-related. Many of the documents had been cut and pasted, reduced, and enlarged.

The next day, Ballew and Messamore met in the Personnel Department and reviewed the documents Messamore had discovered. Following this meeting, Wrenn was suspended pending further investigation. When Ballew and Messamore met with Wrenn to inform her of the suspension, Wrenn responded that she had never worked on personal documents on Hospital time. However, the document directories on the computer contain date and time stamps indicating when the documents were last saved. Additionally, many of the documents on Wrenn's computer were password protected which, according to the defendants, is unnecessary if the documents were work-related. Upon comparing the dates and times on the computer directory and Wrenn's time sheets, Messamore found numerous instances where Wrenn apparently conducted personal business during the work day.

Meessamore, Paullin, and Ballew discharged Wrenn as a result of the investigation. Betty Williams, Vice-President of Human Resources, and Paullin's superior, Nancy Lewis, concurred in the decision. Messamore, Paullin, and Ballew met with Wrenn and informed her that the hospital was discharging her for performing substantial personal work on Hospital time and for misusing Hospital property for an extended period of time. Wrenn's termination papers indicate that the specific reasons for her termination were improper conduct, dishonesty, and falsification of time records. Wrenn alleges that employees in other departments were charged with falsification but were not terminated. For example, Wrenn notes that Donna Bean, a secretary, received a three day suspension for falsifying a time record. Also, two other employees were charged with falsification of medical records but were not terminated for the first offense. There is no evidence, however, of the race of the comparators or whether they were similarly situated.[9]

---

[9]For example, there is no evidence that Wrenn was subject to the same rules and hiring/firing procedures as employees in other departments. Also, there is no evidence that there were common decisionmakers.

Wrenn filed this lawsuit on February 4, 1997, asserting a race discrimination in termination and retaliation claim against the hospital under Title VII and both the hospital and Messamore pursuant to 42 U.S.C. § 1981.[10]

## Analysis

### I. Racially Discriminatory Discharge

Under both Title VII and § 1981, when a plaintiff relies on circumstantial evidence, the court must look to the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). Under McDonnell Douglas, the burden is initially on the plaintiff to show a prima facie case of discrimination. The burden then shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the employment action. Id. If the employer meets this burden, the plaintiff must then show that the reasons articulated by the defendant are pretext for discrimination. Id.

For purposes of this motion, the defendants have conceded that Wrenn can establish a prima facie case of discrimination.[11] They contend, however, that they have articulated legitimate, nondiscriminatory reasons for firing Wrenn and that Wrenn cannot show that the reasons are pretext. Under the burden-shifting analysis, the defendants do not have to actually convince the

---

[10] Although Wrenn's complaint generally alleges that the defendants discriminated against her with regard to "terms and conditions of employment," Wrenn has presented no evidence of any particular terms or conditions of employment to establish a claim for disparate treatment or hostile environment. In fact, Wrenn acknowledges that the only claims the only claims in this case concern her discharge. Therefore, her claims are limited to retaliation and race discrimination in termination.

[11] To the extent that the plaintiff intended to assert a separate claim for retaliation based on the fact that she was told that she could no longer participate in the St. Vincent's Choir, picnic committee, or diversity training, the court finds that summary judgment would be granted for the same reasons as the retaliation claim discussed above.

court of the legitimacy of their articulated reasons. All the defendants must do is produce a reason in order to eliminate the presumption of discrimination created by the plaintiff's prima facie case. In this circuit, the defendants' burden of production has been characterized as "exceedingly light." Allen v. City of Athens, 937 F. Supp. 1531, 1544 (N.D. Ala. 1996) (citing Walker v. Nationsbank, 53 F.3d 1548, 1556 (11th Cir. 1994)).

Here, the defendants assert that Wrenn was fired for falsifying time records, dishonesty, and improper conduct. Based on the evidence presented by the defendants, it is clear that the articulated reasons are legitimate and nondiscriminatory under this exceedingly light standard. Because the defendants have produced legitimate, nondiscriminatory reasons, the burden shifts back to the plaintiff to show that the proffered reasons were pretextual, and that the employment action was motivated, at least in part, by discrimination. In this case, Wrenn has failed to meet this burden. Although Wrenn has presented evidence that three other employees were not terminated for falsifying documents, she has presented no evidence to show that the three other employees were outside the plaintiff's protected class or that they were even similarly situated.[12] In fact, Wrenn acknowledges that the employees worked in other departments. At this stage of the burden-shifting analysis, it is the plaintiff's burden to show that there is a genuine issue of

---

[12]In her response brief, the plaintiff states that she "is without the information necessary to determine the race of the three individuals. . . .However, the defendant bears the burden of presenting the Court with facts sufficient to support summary judgment. For purposes of this motion, the Court can assume that the individuals are of a different race that Wrenn unless provided information to the contrary." The plaintiff's assertions as to the allocations of the burdens in a McDonnell Douglas analysis are flawed. While the defendant, as the moving party, normally bears the burden of production and persuasion in a summary judgment case, when the claim is for discrimination involving circumstantial evidence, the burden-shifting analysis comes into play and changes the parties' obligations. Once the defendant has articulated legitimate, nondiscriminatory reasons that satisfy the minimal standard of production, it is up to the plaintiff to present evidence to the court that a genuine issue of material fact exists as to whether the proffered reasons are pretexts for discrimination.

material fact as to whether the defendant's reasons are pretext. The plaintiff cannot argue that there is a genuine issue of material fact simply by making a blanket statement that "the difference in treatment was not due to the nature of the offense but instead due to the race of the offenders." It is Wrenn's burden to show pretext, and it is one that she has not met. As a result, the court finds no evidence to show that the defendants' reasons were pretexts for discrimination. Consequently, summary judgment is due to be granted as to the discharge claim.

## II. Retaliation

Under § 704 of Title VII, it is unlawful for an employer to retaliate against an employee because she has opposed discrimination or participated in the Title VII process. To establish a prima facie case of retaliation, the plaintiff must show: (1) a statutorily protected activity, (2) an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action. See Wu v. Thomas, 863 F.2d 1543 (11th Cir. 1989). Once the plaintiff makes out a prima facie case of retaliation, the burden-shifting analysis of McDonnell Douglas/Burdine is used to rebut the presumption of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). The defendant must present a legitimate, non-discriminatory reason for the employment action. Upon providing a nonretaliatory reason, the burden once again shifts to the plaintiff to show that the defendant's reasons are pretexts for intentional discrimination.

Wrenn's protected activity relates to her complaints of racial discrimination in both written and verbal form. Wrenn was also terminated, meeting the second element of her prima facie case. For the purposes of summary judgment, the court assumes that Wrenn has shown a causal connection between the protected activity and her termination. However, although Wrenn has presented a prima facie case of discrimination, the defendants have produced nonretaliatory

reasons for her termination. As with Wrenn's racial discharge claim, the defendants have shown that Wrenn was terminated for inappropriate and unprofessional work behavior. Wrenn, however, has failed to produce evidence that the defendants' reasons are pretexts for discrimination. Wrenn has not met her burden under the McDonnell Douglas/Burdine framework to show a genuine issue of material fact regarding pretext. No reasonable jury would find otherwise. As a result, the court finds that her retaliation claim is due to be dismissed.

## Conclusion

For the reasons stated above, the defendants' summary judgment motion is due to be granted in full, thereby terminating this case.

Date: _June 15_, 1999.

Chief Judge Sam C. Pointer, Jr.

Service List:
    Kyle T. Smith
    Lyman Harris
    F. Kytle Frye, III
    Roger K. Quillen
    Howard B. Jackson